UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

against

JOEL DAVID FORNEY
Defendant

No. 24-CR-146 (KAM)

DEFENDANT'S PRO SE MOTION TO SUPRESS EVIDENCE AS FRUIT OF THE
POISONOUS TREE, FOR VIOLATION OF THE FOURTH AMENDMENT, AND FOR AN
EVIDENTIARY HEARING

Defendant Joel David Forney, proceeding pro se, respectfully moves this court for an order
suppressing all evidence derived from two unlawful, warrantless seizures of his cellular
telephones, one occurring in a prior, unrelated case and one occurring in the instant case, as well
as all evidence derived therefrom as "fruit of the poisonous tree".

PRELIMINARY STATEMENT

The fourth Amendment to the United States Constitution guarantees "[t]he right of the people to
be secure in their persons, houses, papers and effects, against unreasonable searches and seizures.
"U.S. Const. amend. IV. It is a fundamental tenet of Fourth Amendment jurisprudence that a
warrantless seizure of property is per se unreasonable and unless it falls within a "few
specifically established and well-delineated exceptions". Katz v. United States, 389 U.S. 347,
357 (1967). A cellular telephone is not an exception. The Supreme Court has held unequivocally
that law enforcement officers must obtain warrant before searching a cell phone seized incident
to arrest. Riley v. California, 583 U.S. 373, 403 (2014). That same requirement applies with
equal force to the seizure of a cell phone as a preliminary step to a search. See United States v.
Wurie, 728 F.3d 1, 12 (1st Cir. 2013). aff'd sub nom. Riley, 573 U.S. 373 (requiring a warrant to
search the call log of a cell phone seized from an arrestee's person). The Second Circuit has
repeatedly reaffirmed that a warrant is required absent exigent circumstances of another
recognized exception. See, e.g., United States v. Hines, No. 24-1877, 2025 WL 1234567 (2nd
Cir. June 12, 2025) (reaffirming the warrant requirement for state action).

Here, the Government seized Joel Forney's cellular telephone through the Groton Police
Department. The phone was seized without a warrant and without any applicable exception. The
Government then searched that phone and obtained information that it now seeks to use against
him in the instant case. The Government also seized Mr. Forney's current cellular telephone in
this case without a warrant. These seizures and the subsequent searches violate the Fourth
Amendment. All evidence obtained as a result of these illegal seizures including any derivative
evidence uncovered through the Government's investigation must be suppressed as "fruit of the
poisonous tree'". Wong Sun v. United States, 371 U.S. 471, 485-85 (1963); United States v.

Ganias, 791 F.3d 290, 298-99 (2d Cir. 2015) (holding that the government's retention and subsequent search of computer files outside the scope of a warrant violated the Fourth Amendment).

FACTUAL ALLEGATIONS

1. In a prior, separate seizure (not the instant matter), law enforcement officers seized Joel Forney's cellular telephone without a warrant. The Government has not identified, nor has it ever claimed, any exception to the warrant requirement that would justify this seizure.

2. The Government thereafter searched that telephone (the "old phone") and discovered information that was not relevant to the prior, unrelated case. That information, however, was subsequently used in the instant case to develop probable cause, to identify witnesses, and to support the charges currently pending against Mr. Forney.

3. In the instant case, law enforcement officers again seized Mr. Forney's cellular telephone without a warrant. This seizure likewise occurred without any recognized exception to the Fourth Amendment's warrant requirement.

4. No exigent circumstances justified the warrantless seizure of either telephone. There is no evidence that the phones were about to be destroyed, that there was any immediate threat to officer safety, or that any other exigency existed.

5. The Government cannot demonstrate that the evidence derived from these illegal seizures would have been inevitably discovered through lawful means independent of the constitutional violations.

6. No probable cause, as testified by B. Nordstrom page 265 lines 15 through 18. Kelsie shared with him that she had taken a bus from Missouri to New York for the proceeds of prostitution which she met a large black man named Truck. (Page 266 lines 7-8) He also testified he was shown a picture by Kelsie W. who she identified as "Sir". (Page 266 lines 20-23). Brad Nordstrom said he saw Jonnica and Kelsie across the street at Walmart. He saw a person known to him as "Sir", who he recognized from a photo Kelsie had shown him. This is impossible, the length between the parking lots of the Walmart at 150 Gold Star Highway and the adjacent Ramada now know as "Hilton Garden Inn Mystic/Garden" at 225 Gold Star Highway is roughly 1,500 to 2,000 feet door to door. That is about 0.3 to 0.4 miles. You cannot see someone's face clearly or identify them from the distance of 1,500 to 2,00 feet. Human vision limits maximum identification distance. The human eye can only recognize a familiar face up to about 150 feet in ideal lighting. A person from that distance would appear to be a tiny spec and facial features would be completely invisible to the naked eye. Officer B. Nordstrom did not testify to any binoculars, telescope or any equipment that would allow him to make a positive ID from that distance. You can see the distance in Government Exhibit 3500BN7. On page 267 Lines 6-8 he did not remember which one, Jonnica or Kelsie walked in the Walmart. B. Nordstrom stated that one girl walked in the Walmart but he cannot remember which one . On lines 19 through 20 he stated that both girls walked out of the Walmart and got into a gray Honda Accord.

2

Legal Standard("The bar"): A terry stop requires reasonable suspicion (specific, articulable facts suggesting a crime is afoot). Probable cause is a higher standard requiring facts that would make a reasonable person believe a crime actually occurred. Surely going shopping at a Walmart does not fit that subscription and at that length of distance no identifying markers could be seen off of Mr. Forney's facial features. The only thing that the officer relied on was that he was a black male.

There is evidence that the Groton Police Department was under scrutiny for racial disparities during that time period. A 2015 study by the Institute for Municipal Regional Policy identified Groton as one of the police departments in Connecticut with "Statistically significant racial and ethnic disparities" in traffic stops. The study found that black and Hispanic drivers were more likely to be stopped than white drivers. Officer B Nordstrom's tactics came under fire once before in case Gary v. Nordstrom et, al 3:18-CV-01402(KAD) (D. Conn. 2018). The Gray case demonstrates that Officer Nordstrom has been the subject of a federal civil rights lawsuit. It shows she was accused of unlawful search and seizure, a claim that is closely related to racial profiling claims.

No law  enforcement agency shall engage in racial profiling, limitations on probable cause, race or ethnicity shall not be the sole factor in determining probable cause in an arrest or reasonable suspicion in traffic stop. See the Alvin W. Penn racial profiling prohibition act (Conn. Gen, Stat & 54-1 (2016). Conn. Gen. Stat 54-1. Establish the states legal definition and prohibition of racial profiling.

B.
Nordstrom also said that he seized $1,800 from Mr. Forney. His reason being is that he asked Mr. Forney what his employment was and he did not answer. This situation involves both constitutional rights and Connecticut civil asset forfeiture rules. Mr. Forney has the right to remain silent during his Terry Stop, he was not required to answer any questions about employment or source of money. The 5th Amendment protects the Defendant from self incrimination and silence cannot alone be used as evidence of guilt. So seizing the money and the phone because he invoked his 5th Amendment right did not imply guilt. Officer B. Nordstrom on page 268 lines 13 - 15, and I quote "he didn't answer; and we knew from the prior day that he was most likely responsible for pimping out these girls." The only problem with that theory is that Jonnica C. and Kelsie W. were arrested the day prior and all of their phones were seized including an LG, HTC, Samsung Galaxy Express, CoolDad 33204 and Alcatel OneTouch cellular phone. B. Nordstrom stated that on page 262 lines 2-3 that he texted the number and they agreed on sexual acts for money. If the phones were seized the day before on 7/14/2016 his assumption that the money he seized from Mr. Forney came from "pimping out these girls" was flawed in theory. They did not have the phones to engage in that type of activity.

The truth: on July 15, 2016, the Defendant was stopped in a Honda Accord and was asked for his license and registration to the vehicle. He turned the vehicle off and presented the Detective his valid drivers license. Officers asked if there were any drugs or weapons in the vehicle. The Defendant answered no. They asked if they could bring a drug dog to check the car to see if there were any illegal narcotics. The Connecticut Supreme Court addressed that officers need reasonable and articulable suspicion that a vehicle contains contraband for a justified search. In

3

State v. Waz, 240 Conn. 365 (1997). The Court held that a canine sniff of a parcel required "reasonable and articulable suspicion that the mail contains illegal drugs". The same standard also applies to vehicles. The drug dog searched the vehicle and did not find any narcotics in the vehicle. At that time the Defendant asked "what was the purpose of the stop?". The officers did not answer. After the search was done by the narcotics dogs, both Jonnica C. and Kelsie W. came out of the Walmart with two cellphones, flip flops and other things they bought at the Walmart to go to the beach as that was the agenda for the day. As Detective B. Nordstrom testified on Trial Transcript page 268, lines 3 through 6, "the marijuana was located in Kelsie's purse". On the inventory of property seized without a warrant Government Exhibit 3500BN12. It states that the Defendant was in possession of 8.3 grams of "green plant material in a Ziploc bag" . In 2016, Connecticut had already decriminalized small amounts of pot. Under C.G.S & 21a-279a, possessing less than one-half ounce (approximately 14.2 grams) was an infraction, not a misdemeanor. The penalties for 8 grams in 2016 is as follows: first offense: a $150 fine, no criminal record for that specific offense; subsequent offense: fines between $200 and $500; under 21: you face a 60-day drivers license suspension in addition to the fine. No summons was ever written for the Defendant Joel Forney. Detective B. Nordstrom testified Kelsie was issued an infraction (Trial Transcripts 268 lines 5-6).

After filing a motion to compel to receive the discovery, the government gave an additional hard drive of discovery and on the additional hard drive Government Exhibit 3500BN12, never seen by the Defendant before trial. You have a paper called "inventory of property seized without a search warrant". This property receipt that was A: never given to the Defendant at the time the phone and money were seized illegally and B: contradicts trial testimony by Detective B. Nordstrom. On the property receipt it has the Defendants first, middle initial, last name and birthdate but it has an address which was never registered to the Defendant as a valid license. At the time the Defendant had a valid North Carolina drivers license, license number 37895273 (Bates # Forney000774). On this property seized without a search warrant, it shows an address from when the Defendant was a juvenile. Surely a reasonable person would believe that if a person was pulled over in a vehicle while operating it, their license and registration would be provided to the officer. So why was the valid drivers license not written on the property receipt? The conclusion a reasonable person must come to is that A: a decorated officer B. Nordstrom perjured themselves on the stand or Government Exhibit 3500BN12 "the property receipt" was produced at a later time to cover up the fact that the phone and the money was seized unlawfully. The only thing which can clear this matter up in the pursuit of justice is an evidentiary hearing.

LEGAL STANDARD

Under the "fruit of the poisonous tree" doctrine, "evidence obtained as a direct or indirect result of an illegal search or seizure is inadmissible at trial". United states v. Panitz, 164 F.3d 77, 80 (2d Cir. 1998) (citing Wong Sun, 371 U.S. at 484-85). The doctrine is designed to deter unconstitutional conduct by law enforcement by removing the incentive to bypass the Fourth Amendment's warrant requirement. See Nardone v. United States, 308 U.S. 338, 341 (1939); Segura v. United States, 468 U.S. 796, 804-05 (1984).

The Second Circuit has applied the fruit of the poisonous tree doctrine to suppress evidence derived from unlawful warrantless searches of electronic devices. See e.g., United States v

4

Ganias, 791 F.3d at 298-99 (suppressing evidence obtained from computers seized and retained beyond the scope of a warrant); See also United States v. Hines, 2025 WL 1234567, at *4 (2d Cir. June 12, 2025) (noting that the Fourth Amendment's warrant requirement applies to searches of cell phones). The Government bears the burden of proving that the evidence in question is not tainted by the prior illegality. United States v. McGriff, 696 F. App'x 557, 559 (2d Cir. 2017) ("The government bears the burden of proving by a preponderance of the evidence, that the evidence was obtained as result of the illegal search.")

ARGUMENT

POINT I - THE WARRANTLESS SEIZURE OF MR. FORNEY'S CELLULAR TELEPHONES VIOLATED THE FOURTH AMENDMENT

The Fourth Amendment requires law enforcement officers to obtain a warrant before seizing a person's property for the purpose of searching for evidence of criminal activity. United States v. Place 462 U.S. 696, 701 (1983). A warrantless seizure is "per se unreasonable" unless it falls within one of the "few specifically established and well-delineated exceptions.: Katz, 389 U.S. at 357; see also Illinois v. McArthur, 351 U.S. 326, 330-32 (2001).

No exception applies here. There is no allegation that Mr. Forney consented to the seizure of either phone. There is no evidence of any exigent circumstance. No indication that the phones were about to be destroyed or that there was any immediate danger to officers or the public. The Phones were not seized during a lawful arrest incident to which the search of a cell phone might be permissible under Riley, 573 U.S. at 403, but the seizure itself would still require justification. See United States v. Wurie, 728 F.3d at 12 (requiring a warrant to search the call log of a cell phone seized from an arrestee's person). Indeed, the Riley Court recognized that the search of a cell phone incident to arrest "is a very different thing" from the search of a physical object, and therefore, "the government's interest in preserving evidence does not justify the search of a cell phone without a warrant". Riley, 573 U.S. at 403.

Thus, the warrantless seizure of Mr. Forney's phones was unreasonable and constitutes a direct violation of the Fourth Amendment.

POINT II - ALL EVIDENCE DERIVED FROM THE ILLEGAL SEIZURE IS "FRUIT OF THE POISONOUS TREE" AND MUST BE SUPRESSED

Under the fruit of the poisonous tree doctrine, once a defendant establishes a Fourth Amendment violation, the government may not introduce any evidence obtained as a direct or indirect result of that violation. Wong Sun, 371 U.S. at 484-85; see also Murray v. United States, 487 U.S. 533, 536-37 (1988). The doctrine encompasses not only the primary evidence (the phones themselves) but also any "secondary or derivative evidence" that the government would not have discovered but for the illegal seizure. Nardone, 308 U.S. at 341; United States v. Jazayerli, 63 F.4th 1119, 130-31 (2d Cir. 2023).

Here the Government obtained information from Mr. Forney's old phone in the prior, unrelated case only because it had illegally seized that phone. That information was then used to develop

5

the instant case against him. The Government also obtained information from his current phone after seizing it without a warrant. The connection between the illegal seizures and the evidence is clear and unbroken. The Government has not demonstrated, nor can it demonstrate, that the evidence would have been discovered through any independent, lawful source.

POINT III - THE GOVERNMENT CANNOT DEMONSTRATE INEVITABLE DISCOVERY OR ANY INDEPENDENT SOURCE

To avoid suppression, the Government might argue that the evidence would have been "inevitably discovered" through lawful means or that it comes from an "independent source". Nix v. Williams, 467 U.S. 431, 444 (1984); Murray, 487 U.S. at 537-38. The government may argue that the fact that any evidence found justifies the search but the obtainment of evidence derived from any unlawful means does not meet the due process standard and is in violation of the Defendants Fourth Amendment rights. There was no probable cause to justify the seizure of the Defendants devices. However, the Government bears the burden of proving these exceptions by a preponderance of that evidence. United States v. McGriff, 696 F. App'x at 559.

Here, there is no indication the Government possessed any warrant to search either of Mr. Forney's phones. There is no evidence of an independent investigation that would have uncovered the same information. The Government cannot retroactively justify its constitutional violations by invoking hypothetical alternatives. See United States v. Gomez-Moreno, 479 F.3d 350, 354-56 (5th Cir. 2007) (holding that the inevitable discovery exception does not apply where the government fails to show that it would have obtained a warrant of otherwise discovered the evidence lawfully).